IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**NOLBERTO GONZALEZ-PABLO,**

    Petitioner,

                                              Case No. 2:25-cv-368
v.                                      Hon. Joseph R. Goodwin, Judge

**CHRISTOPHER MASON,** Acting Superintendent,
South Central Regional Jail and Correctional Facility;
**BRIAN MCSHANE,** Acting Director of Philadelphia
Field Office, U.S. Immigration and Customs
Enforcement; **KRISTI NOEM,** Secretary of the U.S.
Department of Homeland Security; and **PAMELA
BONDI,** Attorney General of the United States,
in their official capacities,

    Respondents.

## CHRISTOPHER MASON'S RESPONSE TO
## EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nolberto Gonzalez-Pablo asks this Court for a writ of habeas corpus to prevent his deportation based upon illegal entry into the United States. He asserts violations of constitutional and statutory rights in the deportation process. But, beyond lawfully detaining Petitioner pursuant to an order from the U.S. Department of Homeland Security, Respondent Chistopher Mason has no role in Petitioner's deportation process. Respondent Mason appears to be named for two reasons. *First*, he is named as the Superintendent of South Central Regional Jail, where Petitioner was once and again is detained. But Petitioner does not allege that the act of detaining him pursuant to the Order is itself unlawful. Instead, he alleges that he was detained by Immigration and Customs Enforcement without due process and pursuant to unlawful reinstatement of a prior removal order. *Second*, Petitioner named Respondent Mason because jail

1

officials would not allow Petitioner's counsel to see him at 2:00 a.m. and asked counsel to return three hours later. Petitioner claims this was a deprivation of his Fifth Amendment due process rights. It wasn't. It was a reasonable restriction serving a legitimate penological interest. And it didn't cause Petitioner any harm.

Respondent Mason takes no position on Counts One through Four of the habeas petition.[*] But Count Five is without merit. The petition should be denied as to Count Five. Any request for injunctive relief based on Count Five is also meritless and should be refused.

## STATEMENT OF FACTS

Petitioner entered South Central Regional Jail ("SCRJ") at 10:24 p.m. on May 30, 2025. OIS Booking Printout, attached hereto as **Exhibit 1**. Petitioner was detained in West Virginia Division of Corrections and Rehabilitation ("WVDCR") custody pursuant to an Order to Detain Alien signed by M. Ondrejcak, deportation officer, U.S. Department of Homeland Security. Form I-203, attached hereto as **Exhibit 2**. He was released from SCRJ at 7:55 a.m. on June 5, 2025, into the custody of U.S. Immigration and Customs Enforcement ("ICE"). **Ex. 1**; Inmate Release from Custody, attached hereto as **Exhibit 3**. Neither Respondent Christopher Mason nor WVDCR

---

[*] That said, Respondent Mason notes that a reinstated order of removal—like the one Petitioner says was noticed against him—"is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C.A. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(a) (barring review by an immigration judge and stating that an immigration *officer* need only conclude that an alien was "subject to a prior order of removal," confirm "the identity of the alien," and assess whether "the alien unlawfully reentered the United States"). This provision "explicitly insulates the removal orders from review[] and generally forecloses discretionary relief from the terms of the reinstated order." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006). Given that Petitioner "admits all of the facts necessary to warrant reinstatement," it appears he cannot establish any due process violation because he "has failed to allege some cognizable prejudice fairly attributable to the challenged process." *Herrera-Molina v. Holder*, 597 F.3d 128, 140 (2d Cir. 2010) (cleaned up); *accord Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). And because the statute contemplates no further proceedings after reinstatement, no apparent INA or APA violation appears present here, either.

received a copy of Petitioner's habeas petition. WVDCR received a copy of this Court's June 5, 2025, Order (ECF 5) on the afternoon of June 6, 2025. So, by the time Respondent Mason was aware of the Court's Order, Petitioner had been released from WVDCR custody.

At approximately 1:45 a.m. on June 5, 2025, Petitioner's counsel appeared at SCRJ and requested to see Petitioner to obtain a signature. Messinger Email, attached hereto as **Exhibit 4**. Petitioner's counsel spoke with Lieutenant Timothy Messinger, who informed him that he could not wake an inmate for an attorney visit during sleeping hours. **Ex. 4**. Petitioner's counsel told Lt. Messinger that his client was an ICE detainee, was scheduled to leave in the morning, and needed to sign a document before he left. **Ex. 4**. Petitioner's counsel also told him, "this will turn into a due process issue in violation of the 5th amendment." **Ex. 4**. Lt. Messinger then spoke with two superiors, both of whom informed him that Petitioner could not be awakened in the middle of the night for an attorney visit. **Ex. 4**. Lt. Messinger then returned to Petitioner's counsel and informed him that he could not wake Petitioner, but that counsel could return at 5:00 a.m. to visit Petitioner. **Ex. 4**.

Regular attorney visitation at jails is between the hours of 7:30 a.m. and 11:00 a.m., 12:00 p.m. and 5:00 p.m., and 6:00 p.m. and 9:00 p.m. Policy Directive 328.00, attached hereto as **Exhibit 5**, p. 2. And while "[r]equests for visitation during other times" may be granted for "extenuating circumstances" such as "signing court documents requiring expeditious action," a visitation request cannot be granted if it would "jeopardize facility security." **Ex. 5**, pp. 2-3. Lt. Messinger appropriately exercised the discretion afforded him under Policy Directive 328.00 by denying counsel's request at 2:00 a.m. but permitting visitation at 5:00 a.m., outside regular attorney visitation hours. And had counsel returned to the facility at 5:00 a.m., he could have obtained Petitioner's signature before his release into ICE custody at 7:55 a.m.

Consistent with this Court's June 5 order, Petitioner was returned to SCRJ at approximately 1:30 p.m. on June 8, 2025.

## WRIT STANDARD

Habeas corpus "is primarily a vehicle for attack by a confined person on the legality of his custody and the traditional remedial scope of the writ has been to secure absolute release—either immediate or conditional—from that custody. Conversely, [42 U.S.C.] § 1983 cannot be used to seek release from illegal physical confinement[.]" *Lee v. Winston*, 717 F.2d 888, 892 (4th Cir. 1983) (cleaned up). To be entitled to habeas relief, a "prisoner must demonstrate that '[h]e is in custody in violation of the Constitution or laws or treaties of the United States.'" *Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024) (quoting 28 U.S.C. § 2241(c)(3)).

## ARGUMENT

Prison administration is best left to the discretion of administrators. But the Court need not reach the merits of Count Five of Petitioner's habeas. Habeas relief is inappropriate for Count Five because Petitioner is challenging conditions of confinement. And conditions-of-confinement claims are properly adjudicated through § 1983 actions, not through § 2241 habeas petitions.

If the Court does reach the merits, it should give due deference to Respondent Mason in the determination of whether denial of special attorney visitation serves a legitimate penological interest. In this case, it does. Attorney visitation is permitted nearly twelve hours of every day, and special attorney visitation is granted in extenuating circumstances when it doesn't jeopardize facility security. Jail officials make that judgment call, and it shouldn't be disturbed, especially when reasonable accommodations were offered just three hours later.

Petitioner was not harmed by the three-hour delay, either. That's a necessary prerequisite for his claim. Without an identifiable harm, Count Five cannot be a basis for relief.

And to the extent Petitioner seeks injunctive relief under Count Five, he lacks standing. Injunctive relief redresses future injuries that are certainly impending. Petitioner does not allege a future injury, let alone a certainly impending one, in Count Five. So he lacks an injury-in-fact and cannot seek injunctive relief. But, even if he had standing, he fails to meet his burden under Rule 65.

Petitioner's Count Five should be denied, and any request for injunctive relief based on Count Five should be refused.

## I. Count Five Is Not Cognizable Under Section 2241 Because Habeas Relief Is Inappropriate To Remedy Conditions Of Confinement.

Petitioner's request for habeas relief in Count Five is improper because habeas relief is not available for conditions-of-confinement claims falling outside the core of habeas corpus. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). So the "core of habeas corpus" is a challenge to the "very fact or duration of [] physical imprisonment, and the relief" is "immediate release or a speedier release from that imprisonment." *Wilborn v. Mansukhani*, 795 F. App'x 157, 163 (4th Cir. 2019).

Count Five challenges neither the fact of nor the duration of Petitioner's detention. Instead, it asserts that Petitioner's right to access to counsel was deprived when jail officials denied a special attorney visitation in the middle of the night and offered a different special attorney visitation at 5:00 a.m. That's a challenge to conditions of confinement. And eight of the eleven circuits, including the Fourth Circuit, "that have addressed the issue in a published decision have concluded that claims challenging the conditions of confinement cannot be brought in a habeas petition." *Id.* (collecting cases). Those courts are consistent with the Supreme Court. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to

particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.") (cleaned up). So the Fourth Circuit has consistently held that "§ 2241 petitions are not" the "appropriate means of challenging conditions of confinement." *Rodriguez v. Ratledge*, 715 Fed. App'x. 261, 266 (4th Cir. 2017) (per curiam); *see Wilborn*, 795 Fed. App'x at 164 (favorably citing *Rodriguez* and holding that petitioner's claim seeking housing reconsideration "would not fall within the scope of habeas corpus").

Jail officials' application of visitation policies is a condition of confinement. *See Dale v. Jurdegan*, 1:23CV282, 2025 WL 755835, at *8 (M.D.N.C. Mar. 10, 2025) (considering visitation privileges under conditions-of-confinement claim standard); *see also, e.g.*, *Banks v. Ma'at*, No. 1:20CV258, 2020 WL 9396590, at *2 (N.D.W. Va. Nov. 20, 2020) ("Petitioners are not entitled to any relief under § 2241 for their claims of denial of access to counsel … [because] they are challenging the conditions of their confinement or a violation of their civil rights, and these are not claims which can be brought in a habeas corpus petition."); *Akers v. Roal-Werner*, No. 12-CV-1037-DRH, 2012 WL 5193583, at *3 (S.D. Ill. Oct. 19, 2012) ("[P]etitioner's assertions that prison staff are interfering with his communications with counsel … cannot be properly raised in a § 2241 petition."). And Petitioner does not claim that jail officials' denial of the request for special attorney visitation outside regular hours bears upon the validity or duration of his confinement. Thus, habeas relief is not appropriate for Count Five. Petitioner's request for habeas relief in Count Five should be denied.

II. **Count Five Fails On Its Merits Because Prison Officials Have Not Unreasonably Limited Petitioner's Right to Counsel.**

Even if this Court were to consider Petitioner's claim in Count Five on its merits, Petitioner's contentions would fail. Courts defer to reasonable jail regulations like the visiting-hours restriction that was enforced here.

A. **Courts Defer To Jail Administrators On Jail Management.**

"[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), so they must give "appropriate deference to the decisions of prison administrators," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). And while "claims to prison access undoubtedly are legitimate … prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Given the "difficult and delicate problems of prison management," courts afford "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 407-08.

"To ensure that courts afford appropriate deference to prison officials," the Supreme Court of the United States has "determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). The Court has found four factors relevant in determining the reasonableness of a regulation. *First*, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (citation omitted). So the "governmental objective must be a legitimate and neutral one,"

and there must be a "logical connection between the regulation and the asserted goal" that is not "so remote as to render the policy arbitrary or irrational." *Id.* at 89-90.

*Second*, courts analyze "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. "Where 'other avenues' remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation.'" *Id.* (cleaned up).

*Third*, courts look at "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Id.* So, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* (citing *Jones*, 433 U.S. at 132–33).

*Finally*, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* (citation omitted). "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90-91. "But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

"It is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that

of the trained penological authorities charged with the administration of such facilities." *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994). So, in applying the *Turner* factors, courts "are meant to be deferential to the prison's rationale." *Firewalker-Fields v. Lee*, 58 F.4th 104, 116 (4th Cir. 2023). Courts "look to see if the policies reasonably relate to some legitimate goal, not whether [they] would make the policy choices differently." *Id.*

### B. Policy Directive 328.00 Is A Reasonable Restriction On Attorney Visitation.

Applying *Turner*'s four-factor test, Policy Directive 328.00 is a reasonable restriction on attorney visitation.

#### 1. There Is A Valid, Rational Connection Between Policy Directive 328.00 And Its Legitimate Penological Interest Of Maintaining Internal Order.

Deference to administrators' judgment applies to security concerns. "Prisoner and officer safety are legitimate concerns[.]" *Firewalker-Fields*, 58 F.4th at 116. So is internal security, described by the Supreme Court as "perhaps the most legitimate of penological goals." *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003). "[L]imiting [] disruption" serves that legitimate penological goal of internal security. *Id.*

WVDCR has regular attorney visitation hours precisely because of security concerns like these. **Ex. 5**, p. 2. It's also why attorney visitation may never "be approved during mealtimes or during inmate counts." **Ex. 5**, p. 3. And it's also why special attorney visitation is subject to the discretionary decision of whether it would "jeopardize facility security." **Ex. 5**, pp. 2-3. So, when SCRJ officials denied a request for special attorney visitation at approximately 2:00 a.m., they made a judgment call. Rather than causing a disruption by waking an entire section of detainees in the middle of the night, they chose to delay visitation until sleeping hours ended. And they still granted special visitation outside regular attorney visitation hours that met Petitioner's stated needs. This Court should defer to that judgment.

## 2. Alternative Means Of Attorney Visitation Remain Open.

Alternative means of attorney visitation exist. "If a prisoner shows that there is no other way to exercise the right at all, even that 'would not be conclusive,' but 'it would be some evidence that the regulations were unreasonable.'" *Firewalker-Fields*, 58 F.4th at 117 (quoting *Overton*, 539 U.S. at 135). "'The pertinent question is not whether the inmates have been denied specific [] accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their [rights].'" *Id.* (quoting *Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007)) (cleaned up). "So this is not about whether [Petitioner] had the opportunity to engage in [attorney visitation] on his terms, but rather whether he could generally engage in [attorney visitation]." *Id.*

Petitioner wasn't denied access to attorney visitation altogether. He was denied attorney visitation in the middle of the night. He had access to attorney visitation eleven and one-half hours out of the day. And he was granted special attorney visitation only three hours after it was requested. So he was afforded the opportunity to exercise his rights.

## 3. Unannounced Attorney Visits In The Middle Of The Night Affect Inmates And Staff.

Unannounced attorney visits in the middle of the night have an impact on jail officials, inmates, and resource allocation. "Where there will be a 'significant ripple effect' from a potential accommodation, 'courts should be particularly deferential.'" *Firewalker-Fields*, 58 F.4th at 117 (quoting *Turner*, 482 U.S. at 90). When an accommodation "threaten[s] the core functions of prison administration, maintaining safety and internal security," and "can be exercised only at the cost of significantly less liberty for everyone else, guards and other prisoners alike," *id.* at 117-18 (quoting *Turner* 482 U.S. at 92) (cleaned up), jail regulations are rational.

Pulling correctional staff from their posts to accommodate an irregular request for attorney visitation affects jail operations. And beyond the operational—and therefore security—concerns,

middle-of-the-night visitation affects inmates. "Sleep is a basic human necessity, and conditions depriving inmates of sleep can support an Eighth Amendment claim." *Safrit v. Stanley*, No. 22-6902, 2024 WL 414142, at *1 (4th Cir. Feb. 5, 2024) (per curiam); *see Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 374 (3d Cir. 2019) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment."); *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (same); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs."). So jail officials are appropriately concerned about interrupting inmates' sleep. And weighing a three-hour delay of one inmate's attorney visitation against an entire section's right to a basic human necessity is a jail administrator's judgment call that should not be disturbed. That's especially so when reasonable accommodations can be made that do not disrupt jail administration or threaten safety and security.

### 4. There Are No Ready Alternatives.

Inmates at SCRJ have access to attorney visitation eleven and one-half hours each day. And SCRJ staff make accommodations for reasonable attorney visitation requests outside those regular visitation hours, just as they did in this case. But they can't provide on-demand access 24 hours per day.

Petitioner does not suggest a reasonable alternative to SCRJ's policy. "And it is [his] burden to suggest those reasonable alternatives, not [Respondent's] burden to imagine them." *Firewalker-Fields*, 58 F.4th at 118 (citation omitted). "In the end, this fourth factor is about easy alternatives, not finding the least restrictive means." *Id.* at 119 (citing *Overton*, 539 U.S. at 136). Petitioner does not appear to claim that SCRJ's policy needs an alternative, only that jail officials should have made a different discretionary decision when considering his request. That's not sufficient to meet his burden or to set aside the "wide-ranging deference" accorded prison

11

administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

### 5. Petitioner Was Not Harmed By The Three-Hour Delay.

Petitioner has not demonstrated that he was harmed by the three-hour delay in special attorney visitation. "[M]eaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings … hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (cleaned up). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 356).

Petitioner does not allege actual injury. Nor does he allege that having his counsel return three hours later would have resulted in his inability to sign a document. And the facts show that, had Petitioner's counsel returned at 5:00 a.m., he could have met with Petitioner and obtained a signature prior to his release from SCRJ at 7:55 a.m. Without an injury, Petitioner cannot maintain his claim in Count Five. It should be denied.

## III. Rule 65 Cannot Issue Any Injunctive Relief Under Count Five.

It's unclear whether Petitioner's request for a temporary restraining order and/or preliminary injunction is intended to apply to Count Five. But, if that's the intention, it's misplaced—even apart from the meritlessness of the underlying claim.

### A. Petitioner Lacks Standing To Seek Injunctive Relief For Count Five.

"The purpose of a temporary restraining order ... or a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *Courtland Company, Inc. v. Union Carbide Corporation*, No. 2:21-cv-00101, 2021 WL 125541, at *8 (S.D.W. Va. Apr. 5, 2021) (citations omitted). Because Rule 65 is designed to "prevent" harm, it's inappropriate to provide relief for alleged past harms. *See Transunion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.").

Because Petitioner does not allege that there is any risk of future harm in Count Five, he lacks standing to seek injunctive relief. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Transunion*, 594 U.S. at 431. To establish standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

Injuries that are "too speculative"—including "allegations of possible future injury" are insufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Particularly relevant here, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). And "not all threatened injuries constitute an injury-in-fact." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017). Even a "realistic threat that reoccurrence of the challenged activity would cause the plaintiff harm in the

reasonable near future" is not enough. *Summers*, 555 U.S. at 500. Rather, a plaintiff seeking injunctive relief must show "continuing, present adverse effects" to establish standing. *O'Shea*, 414 U.S. at 495-96.

To avoid "stretch[ing]" Article III "beyond its purpose," a threatened injury must be "certainly impending" to satisfy the imminence requirement. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). Put differently, the injury must be "concrete in both a qualitative and temporal sense." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (cleaned up).

Petitioner here does not allege "continuing, present adverse effects" or a "certainly impending" threatened injury. He alleges a one-time past occurrence. And the Court can't redress his alleged past harm through forward-looking injunctive relief. So, to the extent he seeks injunctive relief in Count Five, he lacks standing.

### B. Petitioner Fails To Meet His Burden For Relief Under Rule 65.

Even if he had standing, Petitioner has not met his burden under Rule 65. To be granted a temporary restraining order or preliminary injunction, "the plaintiff must establish (1) that [he] is likely to succeed on the merits, (2) that [he] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [his] favor, and (4) that a [temporary restraining order or preliminary injunction] is in the public interest." *Courtland Company, Inc.*, 2021 WL 125541, at *7 (cleaned up).

Petitioner hasn't attempted to meet his burden as to Count Five. He's not likely to succeed on the merits of Count Five. For starters, he lacks standing. But the merits don't favor him either. Jail administrators exercised discretion to deny special attorney visitation in the middle of the night and offered special attorney visitation three hours later. As discussed above, that's a reasonable restriction serving a legitimate penological interest.

But even if he were likely to succeed on the merits of Count Five—he isn't—he has not identified any irreparable harm that will befall him in the *future*, only one instance of alleged *past* harm. Indeed, Petitioner's claim of irreparable harm is removal from the country before his "applications can be adjudicated" and "permanent separation from his U.S. citizen wife and children." ECF 3, p. 2. Petitioner does not claim that Count Five plays any role in those alleged harms.

And because he does not identify any alleged future harm, the balance of the equities and the public interest disfavor injunctive relief for Count Five. To determine whether the balance of equities favors Petitioner, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Sarsour v. Trump*, 245 F. Supp. 3d 719, 740 (E.D. Va. 2017) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24) (2008) (quoting *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987))). Petitioner here does not claim future injury or a future effect. So the equities favor Respondent Mason and his discretion in implementing policies to maintain internal order and security at SCRJ. And the public has a strong interest in the orderly and secure operation of jail facilities. Petitioner cannot overcome that public interest in the absence of an allegation of future harm.

## CONCLUSION

The Court should deny Count Five of Petitioner's habeas petition and should refuse to grant any injunctive relief as to Count Five.

**JOHN B. McCUSKEY**
**ATTORNEY GENERAL**

/s/ Caleb B. David
Caleb B. David (WV Bar #12732)
  *Deputy Solicitor General and*
  *Special Counsel*
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305-0220
Email: Caleb.B.David@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140

*Counsel for Respondent Christopher Mason*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**NOLBERTO GONZALEZ-PABLO,**

    Petitioner,

                                                Case No. 2:25-cv-368

v.                                          Hon. Joseph R. Goodwin, Judge

**CHRISTOPHER MASON, Acting Superintendent,**
**South Central Regional Jail and Correctional Facility;**
**BRIAN MCSHANE, Acting Director of Philadelphia**
**Field Office, U.S. Immigration and Customs**
**Enforcement; KRISTI NOEM, Secretary of the U.S.**
**Department of Homeland Security; and PAMELA**
**BONDI, Attorney General of the United States,**
**in their official capacities,**

    Respondents.

### CERTIFICATE OF SERVICE

I, Caleb B. David, do hereby certify that the foregoing **Christopher Mason's Response To Emergency Petition For Writ Of Habeas Corpus** is being served on counsel of record by the ECF/CM efiling system, this the 9th day of June 2025.

                                                                 /s/ Caleb B. David
                                                                Caleb B. David