**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

NOLBERTO GONZALEZ-PABLO

        Petitioner,

v.                                                          Civil Action No.: 2:25-cv-368

CHRISTOPHER MASON, Acting Superintendent
South Central Regional Jail and Correctional Facility;
BRIAN MCSHANE, Acting Director of Philadelphia
Field Office, U.S. Immigration and Customs
Enforcement; KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security; and PAMELA
BONDI, Attorney General of the United States,
in their official capacities,

        Respondents.

**DEFENDANTS BRIAN MCSHANE, KRISTI NOEM, AND PAMELA
BONDI'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR MOTION TO DISMISS PETITIONER'S EMERGENCY
PETITION FOR WRIT OF HABEAS CORPUS AND RESPONSE TO
PETITIONER'S EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS**

**I. INTRODUCTION**

      Petitioner Nolberto Gonzalez-Pablo is a native and citizen of Mexico and was born in

Chiapas, Mexico, on January 13, 1992.[1] Petitioner first entered the United States illegally on

April 19, 2012, east of Douglas, Arizona. Petitioner was arrested by a Border Patrol Agent after it

was determined that the Petitioner was an alien who had unlawfully entered the United States at

a time and place other than as designated by immigration officers of the United States. On April

---

[1] The Petition filed in this civil action indicates that the Petitioner entered the United States as a
minor and is 28 years of age. ECF 1 at p. 5. However, based on DHS records and information
provided by the Petitioner, he was born on January 13, 1992, first entered illegally entered the
United States at the age of 20, and is currently 33 years of age. *See* ECF No. 7-1.

22, 2012, the Department of Homeland Security ("DHS") conducted an expedited removal pursuant to Section 235(b)(1)(A)(iii) of the Immigration and Naturalization Act ("INA") (8 U.S.C. §1225(b)(1). The Petitioner was interviewed, and he admitted that he was a citizen and national of Mexico, had entered the United States without the necessary documents to enter, pass through, or remain in the country. In addition, Petitioner admitted that he had illegally crossed the border without being inspected by an Immigration Officer at a designated port of entry. He was notified of his right to communicate with a consular officer of Mexico, but he declined that right. The Petitioner also indicated that he did not fear persecution or torture if he was returned to Mexico. DHS informed the Petitioner that he was barred from entering, attempting to enter, or being in the United States for a period of five years. On April 28, 2021, DHS then arranged for the Petitioner to be removed from the United States at Laredo, Texas, on April 28, 2012. *See* ECF No, 7-1 at pp. 13-18, 26-29.

The Petitioner illegally entered the United States again on May 13, 2012, in the desert area near Lukeville, Arizona. DHS arrested him on May 13, 2012. On May 16, 2012, the Department of Homeland Security ("DHS") conducted an expedited removal pursuant to Section 235(b)(1)(A)(iii) of the Immigration and Naturalization Act ("INA"). Petitioner was interviewed and admitted that he was a citizen and national of Mexico, had entered the United States without the necessary documents to enter, pass through, or remain in the country, had not applied for permission to re-enter the United States, and did not have any fear or concern about being returned to Mexico or being removed from the United States. In addition, Petitioner admitted that he had illegally crossed the border without being inspected by an Immigration Officer at a designated port of entry. He was notified of his right to communicate with a consular officer of Mexico, but he declined that right. Petitioner was convicted of illegal re-entry and sentenced to

two days of imprisonment. On May 16, 2012, he was ordered to be removed from the United States. He was removed on an expedited basis pursuant to Section 235(b)(1) of the INA. DHS informed the Petitioner that he was barred from entering, attempting to enter, or being in the United States for a period of twenty years as a result of being inadmissible and the fact he had been previously, excluded, deported, and removed from the United States. Petitioner was removed from the United States at Del Rio, Texas on May 20, 2012. *See* ECF No. 7-1 at pp. 6-12, 30-35.

At some point after May 20, 2012, on a date and location unknown to Defendants McShane, Noem, and Bondi, Petitioner again illegally reentered the United States. While conducting a targeted enforcement operation at the Rio Bravo Restaurant in Mason, West Virginia, on May 30, 2025, DHS agents encountered Petitioner in the dining area of the restaurant. They identified themselves as immigration officers and conducted a brief field interview to determine whether the Petitioner was a suspect they were seeking. During that field interview, Petitioner freely admitted his identity, that he had entered the United States illegally, and that he ad no legal status be in or remain in the United States. The DHS officers informed the Petitioner that he was under arrest for illegally residing in the United States. They placed him in restraints and transported him to the Charleston ERO for processing. Petitioner was provided the opportunity to make a phone call during processing, and he requested that the Consulate of Mexico be notified of his arrest and detention. During processing, he did not claim a fear of returning to Mexico. He denied being a member of a gang or criminal organization. Petitioner did have an expired Mexican passport in his possession at the time of his arrest. *See* ECF No. 7-1 at pp. 4-5, 19-25, 38-39.

On May 30, 2025, DHS served the Petitioner with a Notice of Intent/Decision to Reinstate Prior Order of removal. The Reinstatement Order was based on Petitioner's May 16, 2012, order of deportation/removal. The Petitioner elected not to make a statement regarding this determination. DHS then ordered his removal pursuant to Section 241(a)(5) of the INA (8 U.S.C. §1235(a)(1))[2] and 8 C.F.R. § 241.8. *See* ECF No. 7-1 at pp. 4-5, 19-25, 38-39.

## II. THIS COURT DOES NOT HAVE JURISDICTION TO REVIEW THE REINSTATEMENT ORDER OF PREVIOUS REMOVAL OR ANY DECISIONS RELATING TO THE PETITIONER'S REMOVAL

Congress has created a streamlined process for the judicial review of removal orders. Through a series of amendments to the INA, Congress implemented the current system for judicial review of removal orders. Under current statutes, any challenge or attempt to seek judicial review of a final order of removal must be filed with a federal court of appeals, not a district court:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, ***a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter***, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas

---

[2] Under this statute, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. §1231(a)(5). Once the DHS officer has determined that the alien has been the subject of a prior order of removal, confirmed the identity of the alien, and determined that the alien reentered the United States unlawfully, then requirements for reinstatement of the previous removal order are met. 8 U.S.C. §241.8(c). The alien is to be  provided with notice and an opportunity to make a statement. If the alien's statement does not warrant reconsideration of the decision to reinstate the previous order of removal, then the alien can be removed. *Id.* The alien has no right to a hearing before an immigration judge before removal. *See Martinez*, 86 F.4th 561, 564-65 (4th Cir. 2023).

> corpus review pursuant to section 2241 of Title 28, or any other habeas corpus
> provision, sections 1361 and 1651 of such title, and review pursuant to any other
> provision of law (statutory or nonstatutory).

8 U.S.C. §1252(a)(5) (emphasis added). As 8 U.S.C. §1252(a)(5) makes clear, even habeas

challenges to a final order of removal must be presented to the appropriate federal court of

appeals. Federal courts of appeals are the "sole and exclusive" forum for a review of an order of

removal. *Id.*

The Supreme Court summarized the impact of 8 U.S.C. §1252(a)(5) in *Nasrallah v. Barr*,

590 U.S. 573 (2020):

> The Act also states that judicial review "of all questions of law and *580 fact ...
> arising from any action taken or proceeding brought to remove an alien from the
> United States under this subchapter shall be available only in judicial review of a
> final order under this section." 8 U.S.C. § 1252(b)(9); *see* 110 Stat. 3009–610. In
> other words, a noncitizen's various challenges arising from the removal
> proceeding must be "consolidated in a petition for review and considered by the
> courts of appeals." *INS v. St. Cyr,* 533 U.S. 289, 313, and n. 37, 121 S.Ct. 2271,
> 150 L.Ed.2d 347 (2001). ***By consolidating the issues arising from a final order
> of removal, eliminating review in the district courts, and supplying direct review
> in the courts of appeals, the Act expedites judicial review of final orders of
> removal….***
>
> ***The REAL ID Act clarified that final orders of removal may not be reviewed in
> district courts, even via habeas corpus, and may be reviewed only in the courts
> of appeals.*** *See* 119 Stat. 310, 8 U.S.C. § 1252(a)(5).

*Id.* at 579-80. *See also Jahed v. Acri,* 468 F.3d 230, 233 (4th Cir. 2006) ("The REAL ID Act

eliminated access to habeas corpus for purposes of challenging a removal order. 8 U.S.C.A. §

1252(a)(5). In doing so, it instructed that all such challenges should proceed directly to the

Courts of Appeals as petitions for review.").

The removal order involved in this case is a reinstated order of removal. This type of

removal order is designed for those situations where an alien unlawfully reenters the United

States after having been removed or having departed voluntarily under an order of removal.

Congress "has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). This process is set forth in 8 U.S.C. §1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id.*

For this type of order to apply, "the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Johnson*, 594 U.S. at 530, citing 8 C.F.R. §§241.8(a)-(c), 1241.8(a)-(c). Congress specifically eliminated judicial review of the prior order of removal when it is reinstated under 8 U.S.C. §1231(a)(5): "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed…". *Id.* As the Supreme Court has stated, "8 U. S. C. § 1231(a)(5) applies to 'all illegal reentrants,' and it 'explicitly insulates the removal orders from review,' while also 'generally foreclos[ing] discretionary relief from the terms of the reinstated order.'" *Johnson*, 594 U.S. at 530, quoting *Fernandez-Vargas v. Gonzales*, 540 U.S. 30, 35 (2006).

Challenges to reinstatement orders under 8 U.S.C. §1231(a)(5) can only be reviewed in federal courts of appeals pursuant to 8 U.S.C. §1252(a)(5). *See Lara-Nieto v. Barr*, 945 F.3d 1054, 1059 (8th Cir. 2019) ("Lara-Nieto argues that, because the circumstances surrounding the entry of the Removal Order constitute a "gross miscarriage of justice," the district court had jurisdiction to review DHS's order reinstating the Removal Order pursuant to § 1231(a)(5). We

6

find his argument unpersuasive. Indeed, the relevant statute says that "[n]otwithstanding any other provision of law (statutory or nonstatutory) ... a petition for review filed with an appropriate court of appeals ... shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). ***We have interpreted this to mean that the federal courts of appeals have exclusive jurisdiction to consider the propriety of orders reinstating prior orders of removal.***") (emphasis added); *Ovalle-Ruiz v. Holder*, 591 Fed.Appx. 397, 400 (6th Cir. Nov. 21, 2014) ("We have jurisdiction to review final orders of removal, and we treat reinstatement orders the same as removal orders for purposes of our jurisdiction. 8 U.S.C. § 1252(a)(5)…"); *Iracheta v. Holder*, 730 F.3d 419, 422 (5th Cir. 2013) ("This case arises from DHS's January 17, 2012 reinstatement of the 1999 removal order against Saldana. We treat this appeal as a petition for review of that order of reinstatement. *See* 8 U.S.C. § 1252(a)(5) (providing that a petition for review with the court of appeal is the "sole and exclusive means for judicial review of an order of removal"). We clearly have jurisdiction over a petition for review of a reinstatement order."); *Ochoa-Carrillo v. Gonzales*, 446 F.3d 781, 782 (8th Cir. 2006) ("Thus, judicial review in the appropriate court of appeals is the "sole and exclusive" means to review a § 1231(a)(5) order reinstating a prior removal order, and § 106(c) of the REAL ID Act mandated the transfer of Ochoa-Carrillo's habeas petition to this court."); *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162 (10th Cir. 2004) ("We begin by observing that Berrum–Garcia's resort to a habeas corpus petition in the district court was incorrect. In 8 U.S.C. § 1252 Congress has provided an avenue for direct judicial review of INS removal orders in the courts of appeals. Although the text of § 1252(a)(1) speaks of judicial review for "order[s] of removal," we have previously held that this provision gives us jurisdiction to hear direct appeals from reinstatement orders entered pursuant to § 1231(a)(5).).

*Cf. Martinez*, 86 F.4ᵗʰ at 568 ("Our Court has previously exercised jurisdiction over petitions filed by aliens subject to reinstated removal orders, accepting the Government's position that a reinstatement decision is an 'order of removal.'" citing *Velasquez-Gabriel v. Crocetti,* 263 F.3d 102, 105 (4th Cir. 2001).

In summary, Congress has vested exclusive jurisdiction over the judicial review of removal orders in federal courts of appeals, not district courts, pursuant to 8 U.S.C. §1252(a)(5). Habeas, constitutional, and other challenges to removal orders must be judicially reviewed by federal courts of appeals rather than district courts. Reinstatement orders under 8 U.S.C. §1231(a)(5) which remove an alien pursuant to a prior removal order are removal orders that are subject to the exclusive judicial review of federal appellate courts pursuant to 8 U.S.C. §1252(a)(5) and then only on a limited basis. Thus, district courts, including this Court, lack jurisdiction to judicially review 8 U.S.C. §1231(a)(5) orders. Accordingly, this Court should dismiss Petitioner's petition for lack of jurisdiction.

## III. THE PETITIONER IS NOT ENTITLED TO A FULL REMOVAL PROCEEDING

Despite Petitioner's argument to the contrary, he is not entitled to a full removal proceeding under 8 U.S.C. §1229a before his removal. Congress streamlined the removal of aliens who have been removed (or voluntarily removed) from the United States and then return illegally to the United States. Under 8 U.S.C. §1231(a)(5), the prior order of removal that is reinstated is "not subject to being reopened or reviewed…" *Id.* Aliens being removed pursuant to 8 U.S.C. §1231(a)(5) are generally removed without any further legal proceedings:

> Congress has established a streamlined process for removal of noncitizens who return illegally to this country after a previous removal order has been entered against them. In such cases, the prior adjudication of removal remains final and conclusive: The "prior order of removal is reinstated from its original date," and is "not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Nor may the noncitizen pursue discretionary relief, like asylum. *Fernandez-Vargas v. Gonzales*,

548 U.S. 30, 34–35 & n.4, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). Implementing regulations track the statute, providing that a noncitizen who unlawfully reenters after being ordered removed "shall be removed from the United States by reinstating the prior order," without any right to a hearing before an IJ. 8 C.F.R. § 241.8(a). ***So in the ordinary case, a noncitizen facing a reinstated removal order is removed from the country without further legal proceedings.***

*Tomas-Ramos v. Garland,* 24 F.4th 973, 976 (4th Cir. 2022) (emphasis added). *See also Martinez*, 86 F.4th at 564-65 ("An immigration officer simply obtains the alien's prior order of removal, confirms the alien's identity, and determines whether the alien's reentry was unauthorized… ***The alien has no right to a hearing before an immigration judge.***") (emphasis added), citing 8 U.S.C. §1231(a)(5) and 8 C.F.R. §241.8.

Therefore, Petitioner's claim that he is entitled to a "full removal proceeding" should be denied. Congress has specifically prohibited full removal proceedings in reinstated order cases in 8 U.S.C. §1231(a)(5).

## IV. PETITIONER CANNOT CHALLENGE THE UNDERLYING ORDER BEING REINSTATED

Petitioner claims that the underlying order being reinstated (May 16, 2012) is unlawful because Petitioner was a minor when the order was promulgated and that the Petitioner was not given "proper notice, language interpretation, or the opportunity to contest the factual and legal basis."  ECF No. 1 at p. 6. This claim is factually without merit as the Petitioner was 20 years of age at the time of the entry of that order. *See* ECF No. 7-1 at pp. 10-11, 16-17, 19-20, 26, 29-32. These arguments are also foreclosed by 8 U.S.C. §1231(a)(5) which states that the underlying order being reinstated cannot be "reopened or reviewed." *Id. See also Johnson,* 594 U.S. at 530 ("Title 8 U.S.C. § 1231(a)(5) applies to "all illegal reentrants," and it "explicitly insulates the removal orders from review," while also "generally foreclos[ing] discretionary relief from the terms of the reinstated order."), quoting *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006);

9

*Martinez*, 86 F.4th at 564 ("In such cases, 'the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed.'"), quoting 8 U.S.C. § 1231(a)(5)).

Moreover, the documents accompanying that prior removal order do not support the Petitioner's arguments. The documents contain Spanish interpretations of the removal process, the Petitioner was interviewed and indicated that he understood he was being removed, and he was given the opportunity to contact the Mexican consulate. *See* ECF No. 7-1.

Thus, this argument is without merit and provides no basis for this Court to exercise jurisdiction. Section 1231(a)(5) prohibits reopening and reviewing the underlying removal order which is reinstated pursuant to a reinstatement order.

## V. PETITIONER'S CLAIM UNDER THE ADMINISTRATIVE PROCEDURE ACT, IS BARRED BY 8 U.S.C. §1252(a)(5)

Petitioner has asserted a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2)(A), contending that the decision of the DHS to remove him is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…" *Id.* See ECF No. 1 at p. 7. This claim under the APA fails because 8 U.S.C. §1252(a)(5) is considered a statute that limits or precludes judicial review. The APA does not apply in those situations. 5 U.S.C. §701(a)(1). Federal courts addressing this issue have held that the APA is not applicable to challenges of removal orders because Congress has limited the judicial review of those challenges to federal courts of appeals. 8 U.S.C. §1252(a)(5). Accordingly, the APA does not apply to challenges of removal orders no matter how they are styled. *See Singh v. United States Citizenship and Immigration Services*, 878 F.3d 441, 446 (2d Cir. 2017) ("Because Section 1252(a)(5)'s limitation applies here, it "precludes judicial review" under the APA. *See* 5 U.S.C. § 701(a)(1). With the APA claim barred, there is no basis for federal subject-matter jurisdiction over Singh's

case, and the district court was correct to dismiss it."); *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (" We join the Second and Seventh Circuits in holding that 8 U.S.C. § 1252(a)(5) prohibits Administrative Procedure Act claims that indirectly challenge a removal order."); *Delgado v. Quarantillo*, 643 F.3d 52, (2d Cir. 2011) ("Finally, we reject Delgado's arguments that federal question jurisdiction exists here either because her claim arises under the APA or because she is bringing a mandamus action. The APA explicitly does not apply "to the extent that ... statutes preclude judicial review," 5 U.S.C. § 701(a)(1), as the REAL ID Act does in this instance... Nor may we allow Delgado to evade the restrictions of section 1252(a)(5) by styling her challenge as a mandamus action in order to claim jurisdiction under 28 U.S.C. § 1361."); *Estrada v. Holder*, 604 F.3d 402, 407-08 (7th Cir. 2010) ("That leaves us with the question of what to do with the APA and constitutional claims Cueto Estrada filed in his complaint in the district court… We have concluded that Cueto Estrada can obtain the relief sought in his complaint in the removal proceedings before the IJ and the BIA, and § 1252(a)(5) provides that the exclusive means for judicial review of removal proceedings shall be by petition for review. Accordingly, the district court properly dismissed Cueto Estrada's complaint for lack of subject-matter jurisdiction.") (footnote omitted). *Cf. Lee v. CIS*, 592 F.3d 612, 620 (4th Cir. 2010) ("The claim raised in [the alien's] APA action falls squarely within the scope of § 1252(a)(2)(B)(i). Although Lee's claim in his amended complaint is carefully worded to avoid expressly challenging the denial of his application for adjustment of status, that is clearly what Lee seeks to do.").

### VI. THE REINSTATEMENT ORDER IS LAWFUL AND PETITIONER'S CONSTITUTIONAL CLAIMS ARE WITHOUT MERIT

Under 8 U.S.C. §1231(a)(5), an alien can be lawfully removed when (1) the identity of the alien of the alien; (2) the alien had a prior order of removal; and (3) the alien unlawfully

reentered the United States. *Id.* In this case, the May 16, 2012, removal order barred Petitioner from reentering the United States for twenty years due to his prior illegal entries into the United States. *See* ECF No. 7-1 at p. 8. Petitioner does not contest that he was under a prior order of removal or that he was the alien identified in that removal order. He also does not contest that he unlawfully reentered the United States after the entry of that removal order. Instead, he asserts alleged constitutional violations of the Fifth Amendment, lack of counsel, and lack of due process. *See* ECF No. 1. As stated earlier, the proper forum for reviewing the validity of these claims is the federal court of appeals and not this Court. 8 U.S.C. §1252(a)(5).

Nevertheless, Petitioner cannot succeed on these claims because he has not experienced any prejudice and there is no statutory or constitutional violation which prohibits his removal. He does not contest the essential fact that he was the subject of the prior removal order and that he subsequently reentered the United States violation of that order. Since Petitioner has not contested these facts, he has not experienced any constitutional prejudice that would have altered the entry of the order reinstating the prior removal order. As a result, he cannot succeed on his constitutional claims. *See Green v. Whittaker*, 744 Fed.Appx. 804, 805 (4th Cir. Dec. 6, 2018) (rejecting due process claims for alleged lack of counsel and other defects and holding "The record discloses that Green was never charged with a crime and that she otherwise fails to show that an alleged defect prejudiced the outcome of her case. Her due process claim is therefore unavailing."); *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1163 (10th Cir. 2003) ("Because Duran contests none of these facts, he cannot prove that additional procedural safeguards would have changed the result in his case. This failure to prove prejudice leads us to reject Duran's due process claim."); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 302 (5th Cir. 2002) ("Finally, Ojeda–Terrazas argues that the INS regulations implementing § 241(a)(5) violate his due process rights

because the reinstatement procedure denies him the opportunity to develop a record, have an attorney present, and have an immigration judge decide his case….In this case, Ojeda–Terrazas has conceded his identity, that he was subject to a prior deportation order, and that he illegally reentered the United States. In so doing, Ojeda–Terrazas has conceded that all the predicate findings that the immigration officer made to reinstate Ojeda–Terrazas' 1984 deportation order were true. Ojeda–Terrazas does not assert that, if given the procedural safeguards he seeks, the result in this case would be any different. Therefore, we hold that Ojeda–Terrazas has not alleged that he suffered any actual prejudice as a result of the new reinstatement procedures, and therefore, we do not reach the merits of Ojeda–Terrazas' due process claim.") (footnotes omitted)

Moreover, any attack on the May 16, 2012, removal order which was reinstated would be invalid. Section 1231(a)(5) prohibits review and reopening the prior removal order. *Id.* Furthermore, any such attack would be time-barred. A challenge to a removal order must be filed with the appropriate federal court of appeals within 30 days after the date of the order of removal. *See* 8 U.S.C. §1252(b)(1). The 30-day period begins to run not from the date of the order reinstating the removal order but from the date of the original removal order. *See Meja v. Sessions*, 866 F.3d 573, (4th Cir. 2017) ("In light of the plain text and purpose of § 1251(b)(1), we reject Calla Mejia's reading and hold that the 30-day deadline runs from the date an *original* order of removal becomes final. And, as we've recognized, the 30-day time limit of § 1252(b)(1) constrains our review of an underlying order of removal, even where an alien raises constitutional or legal challenges.") (emphasis in the original). *See also Martinez*, 86 F.4th at 567-68 (time under Section 1252(b)(1) runs date of original underlying order). In this case, the Petition challenging the May 16, 2021, removal order was not filed until June 5, 2025, more than 13 thirteen years later the date of that removal order. *See* ECF No. 1. Thus, the Petitioner's

challenge to that order has not only been brought in the wrong forum, but it also untimely as a matter of law.

In summary, the order reinstating the prior removal order is not only valid, but the underlying order is also valid, and there were no constitutional violations which prejudiced the outcome for the Petitioner. While this court lacks jurisdiction to review the order reinstating the prior removal order and the underlying removal order based on 8 U.S.C. §§ 1231(a)(5), 1251(b)(1), and 1252(a)(5), it is also clear that Petitioner's constitutional claims lack merit.

### VII. THIS COURT LACKS JURISDICTION TO JUDICIALLY REVIEW THE PROSECUTORIAL DISCRETION OF THE DEFENDANTS

Petitioner seeks to have this Court stay his removal because he contends that his request for prosecutorial discretion has not been adjudicated. However, he overlooks the obvious—the decision has already been made to remove him from the United States pursuant to the reinstatement of the prior order of removal. 8 U.S.C. § 1231(a)(5). Courts do not have the jurisdiction to judicially review such decisions:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, ***no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.***

8 U.S.C. §1252(g) (emphasis added). "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion. It does not tax the imagination to understand why it focuses upon the stages of administration where those attempts have occurred." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 485n. 9 (1999). *See also Diaz-Prtillo v. Garland,* 2023 WL 7212269 *2 (4th Cir. Nov. 2, 2023) ("The final matter for our consideration is Diaz-Portillo's motion to remand this matter to the agency to

allow for consideration of her request for prosecutorial discretion. But we lack jurisdiction to review the agency's exercise of prosecutorial discretion, see 8 U.S.C. § 1252(g); *accord Veloz-Luvevano v. Lynch*, 799 F.3d 1308, 1315 (10th Cir. 2015); *Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012), and granting Diaz-Portillo's request for remand—particularly given that the Department of Homeland Security has not expressed that it is willing to consider its position on prosecutorial discretion—would contravene § 1252(g)'s jurisdictional bar. We therefore dismiss the petition for review as to Diaz-Portillo's request for an agency remand to pursue the favorable exercise of prosecutorial discretion."); *Mapoy v. Carroll*, 185 F.3d 224, 230 (4th Cir. 1999), *cert. denied*, 529 U.S. 1018 (2000)  ("In sum, Congress could hardly have been more clear and unequivocal that courts shall not have subject matter jurisdiction over claims arising from the actions of the Attorney General enumerated in § 1252(g) other than jurisdiction that is specifically provided by § 1252…In sum, we conclude that the district court erred in holding that it had jurisdiction over Mapoy's complaint and habeas petition."). Thus, Petitioner's claim based on prosecutorial discretion should be dismissed for lack of jurisdiction under 8 U.S.C. §1252(g).

### VIII. PETITIONER SHOULD NOT BE GRANTED A STAY OF REMOVAL BASED ON HUMANITARIAN GROUNDS AND TO SEEK OTHER RELIEF TO PURSUE LEGAL REMEDIES TO AVOID REMOVAL

The Petitioner also argues that his removal should be stayed on humanitarian grounds and to allow him to seek other relief to avoid removal. While the Petitioner's family situation may indeed be sympathetic, Congress did not provide for such relief under the INA based on the circumstances of this case. In addition, due to the Petitioner's removal under 8 U.S.C. §1231(a)(5), he is not entitled to various types of relief under the INA.

Under 8 U.S.C. §1231(a)(5), an alien "is not eligible and may not apply for any relief under this chapter…." This provision bars relief for adjustment of status, asylum, and other types

of relief afforded under the INA, whether the applications were presented before or after the order reinstating the prior removal order. This is the cost determined by Congress for unlawfully reentering the United States after the entry of removal order. *See Martinez*, 86 F.4[th] at 565 ("an illegal reentrant may not challenge a reinstated removal order and may not pursue discretionary relief like asylum"). *See also Johnson*, 594 U.S. at 530 (8 U.S.C. §1231(a)(5) forecloses discretionary relief); *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1163, 1164-65 (10th Cir. 2004) ("Section 1231(a)(5) states not only that an illegal reentrant 'may not apply' for relief, but also that he is 'not eligible' for relief. Once Petitioner's prior removal order has been reinstated, he no longer qualifies for any relief under the INA, regardless of whether his applications for relief were filed before or after the reinstatement decision is made. The timing of Petitioner's applications is simply immaterial…. Petitioner may not seek adjustment of status under § 1255(i) because § 1231(a)(5) bars illegally reentering aliens from "any relief" under the INA."); *Lino v. Gonzalez*, 467 F.3d 1077, 1080 (7th Cir. 2006) ("Finally, six circuits have held that § 241(a)(5) precludes aliens subject to reinstatement orders from obtaining adjustment of status pursuant to § 245(i)."). As these cases and 8 U.S.C. §1231(a)(5) point out, Petitioner is not eligible for adjustment of status relief since he is subject to removal under that statutory provision since he unlawfully reentered the United States after the entry of a removal order.

Humanitarian arguments also fail in cases involving removal under 8 U.S.C. §1231(a)(5). Congress has not created such an exception to removal under that statutory provision of the INA. *See Lino*, 467 F.3d at 1081 ("Although we recognize the unfortunate circumstances of this case, we have consistently held that 'immigration policy ... is traditionally [within] the province of the political branches.'"), citing *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002); *Berrum-Garcia v. Comfort*, 390 F.3d at 1168 ("Petitioner briefly raises some other claims for

16

relief, all of which we reject. The first of these challenges, that the automatic reinstatement procedures set forth in § 1231(a)(5) undermine the value of family unity, presents a policy argument that is beyond the purview of this court.").

Petitioner also seeks a stay to seek a U visa based on his daughter's abuse and cooperation with law enforcement. ECF No. 1 at p. 2. No U visa application has been submitted, and there is no law enforcement endorsement has been submitted as required for that type of visa. A stay of removal is not necessary to apply for a U visa, and Petitioner could apply for a U visa after his removal. He also has not applied for withholding of removal for fear of persecution upon return to Mexico or for fear of torture upon returning to Mexico under the Convention Against Torture. However, applying for relief under those provisions will not affect the removal order or prevent his removal. [3]

---

[3] Petitioner has never expressed a fear of persecution or torture upon returning to Mexico. The facts demonstrate that he was removed to Mexico in the past, and that he indicated upon removal that he did have a fear of persecution or torture to return to Mexico. *See* ECF No. 7-1 at pp. 10-12, 16-18, 19-21. Even if he was successful in achieving withholding of removal or protection under the Convention Against Torture ("CAT"), the removal order would remain in effect. The withholding under these circumstances is country specific. Thus, he could still be removed and deported to an alternate country that would agree to accept him. *See Johnson,* 594 U.S. at 536 ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien to that particular country, not from the United States. The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute… And the statute provides numerous options: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the United States; and finally, any country willing to accept the alien."); *Martinez,* 86 F.4th at 569 ("After all, an order granting withholding or CAT relief only 'prohibits DHS from removing the alien to [the] particular country [designated], not *from* the United States,' so the removal order 'remains in full force.'), citing *Johnson,* 594 U.S. at 536. *See also* 8 C.F.R. §§ 208.16(f), 1208.16(f), 1240.12. Thus, the non-citizen remains subject to a final order of removal, and DHS is simply restricted from removing him or her to the designated country of removal at that time. 8 U.S.C. § 1231(b)(3); *see Matter of I-S- & C-S-,* 24 I. & N. Dec. 432, 434 (BIA 2008).

## IX. CONCLUSION

In summary, the Petitioner is subject to removal pursuant to a valid removal order under 8 U.S.C. §1231(a)(5). To the extent that Petitioner seeks to challenge or attack that removal order, this Court lacks jurisdiction to consider the Petitioner's claims in his petition pursuant to 8 U.S.C. §1252(a)(5). The proper forum is the appropriate federal court of appeals. Petitioner is not eligible for various types of relief because he is the subject of a removal order under 8 U.S.C. §1231(a)(5). Thus, he is unlikely to succeed on the merits with regard to his petition and the claims asserted therein, and, therefore, he is not entitled to any form of injunctive relief. Accordingly, this civil action and petition should be dismissed.

Respectfully submitted,

**LISA G. JOHNSTON**
**Acting United States Attorney**

**s/Fred B. Westfall, Jr.**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV  25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2025, I electronically filed the foregoing **DEFENDANTS BRIAN MCSHANE, KRISTI NOEM, AND PAMELA BONDI'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR MOTION TO DISMISS PETITIONER'S EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND RESPONSE TO PETITIONER'S EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participant:

William Wilson
Wilson Legal Group, PLLC
WV Bar #11994
1215 Quarrier St., Ste. 1
Charleston, WV 25301
304-757-6541
shane@wilsonvisalaw.com
Counsel for Petitioner

**<u>s/Fred B. Westfall, Jr.</u>**
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
300 Virginia Street East, Room 4000
Charleston, WV  25301
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov