IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NOLBERTO GONZALEZ-PABLO,

                      Petitioner,

v.                                                  CIVIL ACTION NO. 2:25-cv-00368

CHRISTOPHER MASON, et al.,

                      Respondents.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Petitioner's Emergency Petition for Writ of Habeas Corpus, [ECF No. 1], and Petitioner's Emergency Motion for Temporary Restraining Order, [ECF No. 3]. Both were filed on June 5, 2025. The petition and the motion allege that the Petitioner, Mr. Nolberto Gonzalez-Pablo, was detained by ICE and faces immediate deportation.

At the time, the court's jurisdiction was unclear. Therefore, the court ordered that, pursuant to the All Writs Act, the parties were to (1) maintain the status quo, (2) not remove the Petitioner from the jurisdiction, (3) locate the Petitioner as of 4:00 p.m. on June 5, 2025, and (4) Respondents were ordered to file briefs in response to Petitioner's requests by Monday, June 9, 2025, at 10:00 a.m.. A hearing was then scheduled for Monday, June 9, 2025 at 2:00 p.m..

For the reasons set forth below, the court finds that it lacks jurisdiction, and the matter is **DISMISSED without prejudice.**

      **I.      BACKGROUND**

Petitioner Nolberto Gonzalez-Pablo is a citizen of Mexico and long-term resident of West Virginia. He has been living in the United States for over ten years. He is not a United States

citizen, but his wife and two daughters are citizens. Up until his detention, Mr. Gonzalez-Pablo has been the primary provider for his family due to an injury his wife sustained in an accident.

On May 30, 2025, Mr. Gonzales-Pablo was taken into ICE custody where he faced imminent removal. [ECF No. 1]. The removal flowed from the reinstatement of a prior order of removal issued against the Petitioner more than ten years ago, in which he was forbidden from reentering the United States for twenty years. *Id.*

On June 5, 2025, Petitioner filed several emergency motions. Petitioner alleged violations related to a restriction of his due process rights, unlawful reinstatement of a prior removal order, and violation of the Immigration and Nationality Act (INA) among others.

Pursuant to the court's order, Respondent Christopher Mason filed a response in opposition to Petitioner's emergency motions, [ECF No. 8]. The Government Respondents also timely filed a Motion to Dismiss for several reasons including lack of jurisdiction, [ECF No. 7].

At the June 9, 2025 hearing, the Petitioner and counsel for all parties were present. Primarily, the court and the parties addressed the issue of jurisdiction. The Government argued that the court lacked jurisdiction, pursuant to 8 U.S.C. § 1252(a)(5) and relevant case law. In response, the Petitioner argued that the court could allow the Petitioner to invoke the Suspension Clause, maintain his petition for habeas corpus, and the court could lawfully exercise jurisdiction. For the reasons that follow, I disagree.

**II.   JURISDICTION**

The single issue of this matter is whether the court has jurisdiction to consider the Petitioner's motions. Under the Immigration and Nationality Act (INA) (and amended by the REAL ID Act), a "petition for review filed with an appropriate *court of appeals* in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal.

Entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5) (emphasis added). Under the statute, the term "judicial review" includes habeas corpus review under 28 U.S.C. § 2241. *Id.* On its face, the statute mandates that Petitioner's petition for writ of habeas corpus must be filed with the circuit court of appeals—not the district court.

Additionally, section 1231(a)(5) of Title 8 offers very little opportunity for time or review of a reinstatement of a removal order. The statute states in relevant part:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at *any time* after the reentry.

8 U.S.C. § 1231(a)(5). The process is expeditious by statute and regulation. "An immigration officer simply obtains the alien's prior order of removal, confirms the alien's identity, and determines whether the alien's reentry was authorized." *Martinez v. Garland*, 86 F.4th 561, 564 (4th Cir. 2023) (citing 8 C.F.R. § 241.8(a)(1)–(3)). After receiving written notice of the officer's determination, the alien can contest it, but if the officer "declines to reconsider his determination he reinstates the prior removal order." *Id.* The alien is then removed with no right to a hearing before an immigration judge. *Id.* at 564–65.

The Supreme Court has recognized that "in the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). Questions of law and fact arising from an action deporting an alien are only available in "judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This is all to say that a "noncitizen's various challenges arising from the removal proceeding" must be consolidated and considered by the circuit courts of appeals. *Nasrallah*, 590 U.S. at 580.

3

These challenges that must be brought before the appellate courts include habeas actions. The REAL ID Act of 2005, a congressional amendment, made clear that "final orders of removal may not be revied in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Nasrallah*, 590 U.S. at 580 (citing 8 U.S.C. § 1252(a)(5)). "The REAL ID Act eliminated access to habeas corpus for purposes of challenging a removal order. . . . In doing so, it instructed all such challenges should proceed directly to the Courts of Appeals as petitions for review." *Jahed v. Acri*, 468 F.3d 230, 233 (4th Cir. 2006).

In total, the removal process is harsh and quick. *Tomas-Ramos v. Garland*, 24 F.4th 973, 976 (4th Cir. 2022) ("Congress has established a streamlined process for removal of noncitizens who return illegally to this country after a previous removal order has been entered against them."). A prior adjudication of removal is final and conclusive. *Id.* "So in the ordinary case, a noncitizen facing a reinstated removal order is removed from the country without further legal proceedings." *Id.* Should he wish to challenge that final order, he must do so in the court of appeals.

Here, Petitioner first illegally entered the United States in April 2012. [ECF No. 7-1, at 13–14]. He was quickly removed from the United States, and informed that he was barred from reentering for five years. *Id.* at 14. One month later, he illegally entered the United States again. *Id.* at 6–7. He was apprehended, convicted of illegal re-entry, and ordered to be removed. *Id*. He was then informed that he could not enter the United States for a period of twenty years. *Id.* at 19.

Sometime after his second removal, Petitioner reentered the United States and has been living here for at least the last ten years, despite being barred. *Id.* at 19–24. Officers conducted a targeted enforcement operation in Mason, West Virginia, and found the Petitioner. *Id.* at 20. He admitted to having entered the country illegally and having no legal status. *Id.* Officers arrested him and transferred him to a facility in Charleston, West Virginia, for processing. *Id.* The Petitioner

expressed no fear of returning to Mexico and denied any membership in a gang or criminal enterprise. *Id.* at 21. He was provided multiple forms in Spanish, but he refused to sign them or provide answers to officers' questions. *Id.* at 22–25. Most significantly, the Petitioner was served with a Notice of Intent/Decision to Reinstate Prior Order, which he signed. *Id.* at 5.

Petitioner's May 2012 order of removal has been reinstated; therefore, he is subject to deportation. When the Government determines that an "alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Still, the alien cannot apply for relief, and he may be removed at any time. *Id.*

The court does not have jurisdiction over Petitioner's habeas corpus claim. "The REAL ID Act eliminated access to habeas corpus for purposes of challenging a removal order." *Jahed,* 468 at 233. Even if Petitioner's requested review was possible, the proper forum is the court of appeals. "[A]ll such challenges should proceed directly to the Courts of Appeals as petitions for review." *Id.* By statute and binding case law, Petitioner's relief is foreclosed in the district court.[1]

---

[1] Although the parties did not address habeas corpus jurisdiction in terms of recent Supreme Court jurisprudence, I find that this is another ground to dismiss. By statute, writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has reiterated that for "'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *Trump v. J.G.G.*, 604 U.S. ___ (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). When a petitioner "seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld*, 542 U.S. at 447. It follows that in "challenges to *present* physical confinement," "the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent." *Id.* at 445 (emphasis in original); *see also Kanai v. McHugh*, 638 F.3d 251, 256 (4th Cir. 2011).
    Here, Petitioner filed his Emergency Petition and Emergency Motion in the Southern District of West Virginia because from May 30, 2025, to June 5, 2025, he was detained in the South Central Regional Jail ("SCRJ") in Charleston, West Virginia. Those emergency motions were filed on June 5, 2025, around 11:00 a.m., but at that time Petitioner was already in transport to the ICE detention facility in Philipsburg, Pennsylvania. [ECF No. 1] (alleging Petitioner's transport began at 7:55 a.m.). When the court ordered Petitioner not to be removed from the jurisdiction, Petitioner had already been transported out of the jurisdiction for hours.
    Although there is no evidence that the Government has acted in bad faith, I share in part the views expressed in Justice Sotomayor's dissent in *Trump v. J.G.G.*. I believe that when the Government seeks to avoid judicial review and acts so swiftly as to deprive detainees access to the Great Writ, the Suspension Clause is implicated.

### III. THE SUSPENSION CLAUSE

At the June 9 hearing, the Petitioner offered an alternative ground for jurisdiction: the Suspension Clause. The writ of habeas corpus is a powerful mechanism, explicitly mentioned in the Constitution, and not easily defeated by statute. U.S. Const. art. I § 9, cl. 2. The Suspension Clause states that the "Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." *Id.* "The Clause protects the rights of the detained by a means consistent with the essential design of the Constitution." *Boumediene v. Bush*, 553 U.S. 723, 746 (2008). In short, this court can retain jurisdiction, despite the statutes already discussed, if the Petitioner invoke the Suspension Clause to pursue his habeas relief. The district court must take a two-step analysis.

First, the Supreme Court has provided three factors for district courts to consider when assessing the reach of the Suspension Clause. *Id.* at 766. Those factors are

> (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ.

*Id.* The analysis of these factors does not result in easy Yes or No answers. Instead, the district court must use that analysis to determine whether a detainee's right to file a writ has been unconstitutionally suspended. Second, the district court must consider if there are adequate substitutions to the writ. *Id.* at 772. If there are not adequate alternatives to relief, the detainee is entitled to invoke the Suspension Clause, and the district court can retain jurisdiction.

Petitioner argues that *Joshua M. v. Barr* is instructive. 439 F. Supp. 3d 632 (E.D. Va. 2020). In *Joshua M.*, the district court held that an alien minor was "entitled to constitutional protections, including those provided by the Suspension Clause" after considering the three factors above. *Id.* at 672. The court noted the petitioner's "Special Immigrant Juvenile" status under which he

6

enjoyed "statutory and constitutional protections." *Id.* The court also considered that his status put the case "in a unique procedural posture given the Congressional protections provided to young immigrations." *Id.* Finally, the court found that he was detained for two minor traffic offenses and that there would be "no serious practical obstacles" to permitting the habeas proceedings—the last two factors favoring the petitioner's entitlement to the Suspension Clause. *Id.*

When it considered the adequate substitutions to the writ, the court again emphasized the special status of the petitioner. *Id.* at 674. Specifically, the court found that the petitioner could not adequately seek habeas remedies from abroad because (1) he would lose his special immigration status if he was removed and (2) he faced dangerous conditions in his home country. *Id.* at 674–75. "[U]nder these unusual circumstances," the court held that the "alternative remedy to litigate from abroad [did] not provide an adequate substitute for habeas." *Id.* at 677.

Just as the *Joshua M.* court noted, its case is "unique." *Id*. at 675. I find it neither instructive nor persuasive. Here, the Petitioner has no special immigration status and has now been subject to multiple removals and bars to re-entry. At the hearing, the Government represented that any special status the Petitioner may have received is now lost as he is subject to a reinstated order of removal. Nor has the Petitioner offered any evidence—to the court or the immigration officers—that he fears returning to Mexico or that he would be subject to violence upon his return.

At the hearing, Petitioner forwarded two primary arguments for the court to retain jurisdiction: (1) the need for time to engage in discovery and (2) his family's need for him to remain home and work. I am sympathetic to both arguments, however, they fail to meet the harsh structure of the removal statutes. "Congress has established a streamlined process for removal of noncitizens," and it offers limited avenues for aliens to challenge their removal. *Tomas-Ramos*, 24 F.4th at 976. Further, Congress has offered no exceptions for family circumstances.

7

## IV. CONCLUSION

None of this is to say that the Suspension Clause cannot apply in other factually distinct re-removal proceedings. Indeed, "[i]n our own system, the Suspension Clause is designed to protect against [] cyclical abuses." *Boumediene*, 553 U.S. at 745. "The Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Id.* This is an enumerated protection of the Constitution, and a "time-tested device" of the judiciary to "maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty." *Id.* (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)).

Additionally, I do not suggest that the courts allowing petitioners to invoke the Suspension Clause are wrong. Factual differences will naturally produce different results, as in *Joshua M.* where the petitioner faced danger returning to his home country and would lose a special immigration status. 439 F. Supp. 3d at 675. In *Siahaan v. Madrigal*, the court held that a petitioner could invoke the Suspension Clause after living in the United States for 30 years on an expired visa, having no criminal history, and facing religious persecution in his home country. No. PWG-20-02618, 2020 WL 5893638, at *7 (D. Md. Oct. 5, 2020). In *Lopez v. Doe*, the court allowed a petitioner to invoke the Suspension Clause for his detention claim when he claimed that he was in fact a United States citizen. 681 F. Supp. 3d 472, 489 (E.D. Va. 2023).

I am concerned that the rapid removal of aliens across the United States leaves many powerless to challenge their confinement or their status in time. Today, the Government whisks detainees out of their home states by the plane full—and usually in short fashion. *See Suri v. Trump*, No. 1:25-cv-480, 2025 WL 1310745, at 13 (E.D. Va. May 6, 2025) (collecting cases of detainees being transported from facility to facility and flown across the country within 24 hours). But even in quick proceedings, aliens must be afforded some opportunity to challenge their detention. The courts must ensure that aliens may exercise their rights under the Constitution. The

Suspension Clause serves this very purpose: to be a "critical check on the Executive, ensuring that is does not detain individuals except in accordance with the law." *Hamdi v. Rumsfeld*, 5542 U.S. 507, 525 (2004).

On its face as raised in this court, existing law requires the dismissal of this matter for want of jurisdiction. That said, every court has an independent duty to uphold and support the Constitution. The Executive and Legislative Branches are given great latitude to regulate immigration into the United States. Though invocation of the writ is not appropriate in this case, it remains a constitutional safeguard for others across the country.

For these reasons, the court finds that it lacks jurisdiction. The matter is **DISMISSED without prejudice.**

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record; any unrepresented party; the Office of the United States Attorney for the Southern District of West Virginia; the United States Marshall Service for the Southern District of West Virginia; the Moshannon Valley Processing Center at 555 GEO Dr., Philipsburg, PA 16866; the Attorney General of the United States at 950 Pennsylvania Ave. NW, Washington, DC 20530; and the Office of the Principal Legal Advisor of the U.S. Immigration and Customs Enforcement at OPLA-Philadelphia-DutyAttorney@ice.dhs.gov.

ENTER:   June 10, 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE